Today's cases will be called, as previously announced, the times will be as allotted to  The first case today is No. 231515, United States v. Edwin Otero. At this time, would counsel for the appellant come to the podium and introduce herself on the record to begin? Good morning, Your Honors. Attorney Mondew for Mr. Otero. You may proceed. I just want to spend a brief minute. You want to save any time for rebuttal?  I'm sorry? Rebuttal time. You're going to save time for rebuttal? I am. At least two minutes. Two minutes for rebuttal. Okay. Okay. Let's proceed. Just a brief summary that I have probably repeated in my opening brief and reply brief many times, that the enhancement is not supported by preponderance of the evidence. That's based on what the district court didn't find. And Ms. Cotel's testimony? Let me ask you, isn't the video plus the statements sufficient? And the video is in evidence, and we're able to see it. Isn't that sufficient to affirm, you know, the judge's finding? Well, she said she relied on the video, but the video does not show even an attempt. Actually, Ms. Cotel's testimony is the video that was never recovered, which is more, I guess, important to the government's case than the ones that show the beating. But even she said, as she was being coached by him, looking at a video on her phone, on his phone, on another phone, that she couldn't tell because of the angle of the camera. Okay, but if you look at the video, he's, the victim is slowly, you know, stripped, start naked. Of course, he's beaten, but then he's turned around and your client says, I'm going to do X, going to do Y, I'm going to do Z. And then there's further evidence that he's bragging about what he did to the victim. Isn't that enough for the judge to make the finding? You know, the beating, the videos are despicable, horrendous, and Mr. Otero is a liar. He embellished, he's the one who shot up that phrase, and he was embellishing. Why do we have to accept that that's embellishment as opposed to an admission? Excuse me, I'm probably going to have to put these on because my ears are still popping from the flight. Is that going to work? Why do we have to accept that as puffery? Does this go on? Yeah, yeah. Sorry. That's okay. Yep. Okay, could you repeat that? Why do we have to accept that as puffery as opposed to... Can't hear it. Maybe need some new batteries? Or get the volume higher. And we'll give you some time back, don't worry. And is it on? Okay. Could you repeat that? One, two, three. Can you hear me better? It's all static. Okay. I'm sorry about that. Can you turn it up? You can stop the clock and bring it back two and a half minutes. And I can withdraw the question also. Okay. I'll withdraw the question, Gus. I'm going to ask it myself. Oh, okay. Okay, so the question Judge Thompson has, can you hear me? I think my voice is a little loud. Yes, yes. Her question is why, you know, this is a credibility issue, why is it puffery versus, you know, something that's credible or it's an admission versus puffery? Because that's a finding for the district court to make, not for us. If you take all the alleged evidence that he actually did or attempted to do, what the enhancement requires, it doesn't add up to a preponderance of the evidence. I mean, there's got to be evidence, and Ms. Cotel didn't provide that, and the videos didn't provide that, and Mr. Otero's boasting, bragging, and that permeated all the other co-defendants who were charged with the enhancement said he was a bragger. Okay, but he's also bragging, but he's got that stick there or whatever, I forgot what it was, and he's showing it to, you know, again, add one plus another matter to another matter, and it should add up. Well, he did admit he touched him on the buttocks with a sledgehammer, and it's obvious from the videos the victim was naked. So the two questions I posed in my reply were, are those sexual exploitation? The statute, which after all we pay attention to here, defines sexual conduct as the intentional touching of the buttocks with an intent to humiliate. Isn't that exactly what he did on the video? Yeah, but it goes further, Your Honor. It says, touching either directly or through the clothing of the buttocks of any person with an intent to abuse, humiliate, harass, or degrade, or arouse, or gratify the sexual desire of any person. Now, part of those words are an intent. The other part, well, so is the sexual desire, but there is no evidence that he intended anything sexual. But you don't, it's intent to humiliate. That was the whole purpose of what he was doing. The humiliation was stripping him naked to make the blows more severe, to make the blood show as he beat him. It had, it wasn't sexual. But the rest, he himself called it rape. Yeah, he said I raped, he said. But most people understand rape to be an act of sexual violence. But the 28J letter I just submitted, I'm sorry it was so late but I've had some medical issues, kind of fit it because even though it's a Ninth Circuit case and it's only persuasive, they were both, the statements were out of court, not under oath. And there was collaboration in Behar Gizar, his muddy clothing, walking on the street early in the morning where there were no stores open, the suspicion he was illegal. But, and that was collaborated. In this case, Mr. Otero's bragging, I'm a big guy, I'm a tough guy. He had all the other minions he had doing the dirty work for him, most of it. It's a credibility. The court didn't have to accept that it was bragging as opposed to an admission. What was corroborated allowed the court to make a sufficient inference that there was preponderance of the evidence to support the enhancement. I disagree that it was corroborated by Mr. Kotel or the video or even his statement, but I would like to save some time for the Ouellette, am I pronouncing that correctly, argument? Okay, you still have, Diane, she's still got like two and a half minutes left, so once this time is up, you still have two and a half minutes, so you're going to have to answer the question and then move to your other argument. I disagree. I don't see a preponderance of the evidence from any of it. It was an aggressive punishment for what he thought, because you don't screw around with the big guy. And to threaten, threaten rape, but let me say this. In the earlier filings in this matter, Basilice and Joseph, the government, did combined trial briefs and combined sentencing memos. Their attorneys all argued it was bragging as well. This is not something I'm picking out of thin air. However, they also brought up that Mr. Otero lied about shooting up the house at Frey's, when it was really Joseph. That statement was a lie as well. If he lied once, he could lie twice. As far as touching on the buttocks with the object, the thorough research I did on that, 90% of the cases I got were minors. That was prevalent throughout all of them. The 10% that were adult-adult were civil, a party, on the bus. You still have about two and a half minutes. Why don't you turn to your other topic before you run out of time. I'm sorry? Turn to your other topic before you run out of time. In my opening brief, I mentioned Ouellette, which is the seminal case. Well, not the first one, but it certainly is cited frequently. If the judge says, I'm going to impose the same sentence anyway, even if I'm wrong, it has to be untethered. In the government's response, they didn't bring that up. They didn't argue against it. They didn't even mention it. In my reply brief, I did again. I said, that's true. But in this case, as required under Ouellette, I think the last case I put a 28-J letter in was Maldonado v. Negroni. That's still good law. That the district court has to indicate sufficiently that he or she is untethering the sentence she is imposing from the guidelines. In this case, the judge said, I'm going to impose the same sentence, no matter if I'm wrong, on the sentence sexual exploitation. She never mentioned it was a sentence based on 353A. Totally. Bring it apart. Separate it. Cut the ties. So therefore, Negroni is the last case I found. So what you're saying is that if the judge specifically doesn't cite 3553A, despite everything else he or she may say, it's still a reversible error? I believe it has to be explicit on the record. So even if you say the sentence sufficient but not great or necessary, but you forget, as a district judge, to cite the statute. That's wrong? The reason it should be obvious, but at least it's obvious to me in this case, is because that conduct, with the sledgehammer and the rape and him saying that, permeated the entire proceedings with Mr. Otero and played a really big part in Vassilisi's trial. I argued it was the basis for the sentence. If you remove the six levels, and there's a little bit of dispute between what counsel argued and what the judge said, because counsel said level 37 if you take six from 43, but the judge said if you take the six away, she's smack dab in the middle of 38. Okay, but let's assume even if that finding was wrong, just the beating and everything that transpired in that video, wouldn't that be sufficient to support her sentence anyway? I disagree, Your Honor. I do not think so. I think the sentence is unbalanced. In what way? Because it is heavily focused on not only the beating, which was despicable, but the sexual overtones the judge says she found from it. And I say there were no sexual overtones at all. And therefore, because the sentence relied on it, it needs to be remanded for resentencing. Okay, you have two minutes for rebuttal. So let's hear from Ms. DeVincentis for the government. Good morning. May it please the Court, Alexia DeVincentis on behalf of the United States. The district court did not clearly err in finding by preponderance that Otero sexually exploited the victim. And as the court's questioning has suggested, the recovered videos, Kotel's testimony, and Otero's own recorded statement all support that conclusion. The videos show that during the course of this attack, Otero not only repeatedly bludgeoned the victim with a sledgehammer, but also said he was going to rape the victim, ordered that the victim be made to lie on his stomach, and demanded that his co-conspirators remove the victim's underwear. After being threatened with a hammer to the head and knives, the victim is seen removing his own underwear. And in the final recorded video, recovered video, we hear Otero demanding that the victim say, I'm sorry, daddy, and kiss his feet. The conclusion that this assault had sexual overtones is unassailable and certainly not clearly erroneous. While those videos did not themselves depict a rape or actual attempted rape, they did lend credibility to the testimony of Brooke Kotel, who testified at Basile's trial that Otero showed her a video which he described as depicting him attempting to, excuse me, actually inserting the handle of a sledgehammer into the victim's anus. And she said that although she could not tell whether an actual insertion occurred, that certainly looked to her like what Otero was attempting to do. Is it necessary for the government to prove that that's what happened, as opposed to simply touching the buttocks? It's not necessary, Judge Kayada. As we've set forth in the brief, the offensive touching would alone support the enhancement. But we believe that the evidence goes further than that here to support a finding of rape, as the district court found at Basile's sentencing. That's docket number 1000 at page 10. Or at a minimum, an attempted rape. Now, in addition to Kotel's testimony in the videos, we also have Otero's own statement captured in the weeks following the kidnapping, where he states that he raped this person and caught it on camera. And as the questioning suggests, the district court was entitled to treat that not as puffery, but an admission on Otero's part. And moreover, as suggested by Judge Halpe, even setting aside Otero's admission that was captured on the recorded call, the videos plus the testimony alone would support application of the enhancement. I would like to briefly address the defense counsel's harmlessness argument. We believe, again, that this enhancement is fully supported by the evidence that was presented here. And we understand that the court may well want to write on this topic, given the relative dearth of cases on this area, particularly in the context of assaults that are done not for sexual gratification purposes. But we do want to make clear that the government's position is that any error here would be harmless, and that this court's recent decision in Maldonado Negroni does not change that fact. In that case, the district court gave a bare affirmative response when the government asked post-imposition of sentence whether it would impose the same sentence. And it did so without any elaboration or, in fact, any indication that it understood that the sentence that it was imposing was four times above the guidelines range that the defendant contended applied. That is a far cry from what happened here. Otero was the last of five co-conspirators who were sentenced in connection with this kidnapping. Each of the four who came before him also challenged the enhancement. Was the same judge involved with the co-defendants? Yes, it was the same judge for all of these sentencings. And the district court judge specifically stated at Basile's sentencing that she was taking into account the fact that the sexual exploitation was a disputed fact. And in Basile's sentencing, in Joseph's sentencing, and at Lee's sentencing, she specifically indicated that she was sentencing in a manner that reflected her judgment as to the appropriate sentence with or without the enhancement. And, in fact, in Joseph's sentencing, very similar to what she said here, she referenced the competing guidelines range and said there was no circumstance under which she would impose a different sentence. And so that backdrop to Otero's sentencing, we believe, demonstrates firmly that this was not some sort of afterthought by the district court judge. This was the result of a very carefully thought-through sentencing plan relative to these defendants given the disputed sexual exploitation enhancement. Let me ask you one thing about the sentencing for Otero. Because, obviously, the judge relied on the evidence for the other co-defendants, but Otero was placed on, I assume, through the PSR, was placed on notice that the court could consider it, and there were no objections either to the PSR or to the judge considering that evidence from the other cases, right? The evidence is you can't apply the enhancement. Otero objected to application of the enhancement but never objected that the court, even if it wasn't applying the enhancement, could nonetheless consider those facts in connection with the sentencing plan. Okay. Yeah, because I know we have case laws saying that at least the defendant has to be on notice or if he rejects, then you have to give him sufficient time, but that did not happen here. It was simply the enhancement should not apply. That's correct. Okay. Your sister counsel seems to be suggesting that if the court doesn't explicitly say 3553, then we're supposed to determine that the court wasn't sufficiently referencing 3553. Yes, Judge Thompson, and in fact, I would refer this court to page 345 of Maldonado-Negroni where the court made clear that it wasn't suggesting that the district court had to use some sort of specific language to indicate that it was untethering from the guidelines. I would also note that at that same pin site, the court makes clear that the idea isn't that the district court has to disregard the sentencing guidelines in their entirety. It just has to indicate that it has detached the sentence from the erroneous guidelines calculation. So to the extent that the defendant is suggesting that consideration of the guidelines at all suggests a lack of harmlessness, we would dispute that. And unless there are further questions, the government would rest on its brief. Okay. Thank you. Thank you, counsel. At this time, I would like to ask counsel to at least reintroduce herself on the record. Just briefly on the remand issue. After reading all that the judge had before her to consider, especially at sentencing when she was clearly and should have been upset with what she saw, there are still things she didn't see. Yet just the nakedness and touching the buttocks of the defendant did not give sexual overtones to a vicious beating. It was to make the blows harder, like I argued in my opening brief, to make him be more accessible to harm. It was terrible. What mitigating equities are you suggesting the court should have weighed differently? What is it positive about the defendant that should have been given greater weight? From the time that the government found or got evidence about this separate video, it became the whole focal point. It permeates Mr. Otero's case. And he rightly should be punished for the beating, which he is, and there's enhancements that did that. Counts 9, 10, and 11 address the beating, the intimidation. But if he didn't, if all it was was his bragging, then the enhancement doesn't apply because it doesn't apply to bragging or threatening. It applies to attempting or intending. And there was no evidence Mr. Otero intended any sexual overtones. Thank you. Okay, thank you. You're excused.